UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARY HUGHES,

               Plaintiff,

– against –

CORD MEYER DEVELOPMENT COMPANY, CORD MEYER DEVELOPMENT, LLC, and MATTHEW WHALEN, individually and as an aider and abettor,

               Defendants.

COMPLAINT

Case No.: 21-cv-6007

Jury Trial Demanded

Plaintiff, **MARY HUGHES**, by and through her attorneys, **ZABELL & COLLOTTA, P.C.**, complains and alleges as follows:

## I.    PRELIMINARY STATEMENT

1. Plaintiff brings this civil action seeking declaratory relief, money damages and affirmative relief based upon the Corporate Defendants' violations of Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. §2000e *et. seq.*, the New York State Human Rights Law (hereinafter "NYSHRL"), N.Y. Exec. Law § 296 *et seq.* (McKinney 1993 & 2001 supp.), Title 8 of the New York City Administrative Code, the New York City Human Rights Law (*hereinafter* "NYCHRL"), and other appropriate rules, regulations, statutes and ordinances; and the Defendants' violations of the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190, *et seq.*. Plaintiff also brings this action to recover declaratory, monetary and affirmative relief based upon violations of the New York State Human Rights Law (hereinafter "NYSHRL"), N.Y. Exec. Law § 296, *et seq.* (McKinney 1993 & 2001 supp.) and Title 8 of the New

York City Administrative Code, the New York City Human Rights Law (*hereinafter* "NYCHRL") committed by individual Defendant **MATTHEW WHALEN** in his capacity as aider and abettor, and additional causes of action arising under other rules, regulations, statutes and ordinances.

## II.   JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. § 1331. This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367.

3. This action properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1331.

4. This court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## III.   PARTIES

5. Plaintiff, Mary Hughes (hereinafter "Plaintiff" or "Ms. Hughes"), was at all times relevant herein a domiciliary of the State of New York, residing in Suffolk County.

6. At all times relevant to the Complaint, Plaintiff has been an "employee" within the meaning of 42 U.S.C. § 2000e(f), and § 190(2) of the NYLL, and a "person" within the meaning of 42 U.S.C. § 2000e(a), § 292(1) of the NYSHRL, and Section 8-102 of the New York City Administrative Code.

7. Upon information and belief, Defendant Cord Meyer Development Company (hereinafter "Cord Meyer Development Company") is a domestic corporation located at 111-15 Queens Boulevard, Forest Hills, New York 11375.

8. Upon information and belief, at all times relevant to the Complaint, Cord Meyer Development Company has been an "employer" within the meaning of 29 U.S.C. § 203(d), 42 U.S.C. § 2000e(b), § 190(3) of the NYLL, § 292(5) of the NYSHRL, and Section 8-102 of the New York City Administrative Code, and a "person" within the meaning of 42 U.S.C. § 2000e(a), § 292(1) of the NYSHRL, and Section 8-102 of the New York City Administrative Code.

9. Upon information and belief, at all times relevant to the Complaint, Cord Meyer Development Company employed fifteen (15) or more employees within the meaning of 29 U.S.C. §2611(4)(a)(i).

10. Upon information and belief, Defendant Cord Meyer Development LLC (hereinafter "Cord Meyer Development LLC") is a domestic corporation located at 111-15 Queens Boulevard, Forest Hills, New York 11375.

11. Upon information and belief, at all times relevant to the Complaint, Cord Meyer Development LLC has been an "employer" within the meaning of 29 U.S.C. § 203(d), 42 U.S.C. § 2000e(b), § 190(3) of the NYLL, § 292(5) of the NYSHRL. and Section 8-102 of the New York City Administrative Code, and a "person" within the meaning of 42 U.S.C. § 2000e(a), § 292(1) of the NYSHRL, and Section 8-102 of the New York City Administrative Code.

12. Upon information and belief, at all times relevant to the Complaint, Cord Meyer Development LLC employed fifteen (15) or more employees within the meaning of 29 U.S.C. §2611(4)(a)(i).

13. Upon information and belief, although existing with the New York State Department of State, Division of Corporations as two separate legal entities, Cord Meyer Development Company, and Cord Meyer Development LLC are under common ownership and management. As such, in practice these nominally separate entities operate as a single integrated enterprise, and therefore one integrated employer, and will be collectively hereinafter referred to as "Cord Meyer" or the "Company".

14. Upon information and belief, at all times relevant to the Complaint, Defendant Matthew Whalen (hereinafter "Defendant Whalen" or "Whalen") was and is the President and Chief Executive Officer ("CEO") of Cord Meyer.

15. Upon information and belief, at all times relevant to the Complaint, Mr. Whalen was and is an "employer" within the meaning of 42 U.S.C. § 2000e(b), and § 190(3) of the NYLL, and a "person" pursuant to 42 U.S.C. § 2000e(a), § 292(1) of the NYSHRL, and Section 8-102 of the New York City Administrative Code.

## IV.   FACTS

16. Plaintiff repeats and realleges each and every allegation previously contained herein.

17.   Plaintiff began her employment with the Company on March 23, 1987 in the position of Administrative Assistant in the leasing department.

18.   Plaintiff worked her way up in the Company and became Vice President

4

of Leasing in or about 2000-2001, and remained in that position until her unlawful termination from the Company in September 2021.

19. In her role as Vice President of Leasing, she was responsible for the leasing operations of the Company.

20. In addition to being Vice President, Plaintiff is also an Officer of the Company and share owner.

21. In or about December 2020, during her annual year-end review Plaintiff was recognized for her hard work throughout the unprecedented COVID-19 pandemic and, as an Officer of the Company, given a $40,000 bonus.

22. During this same meeting, Plaintiff was advised she would now have a different direct report. Rather than reporting to the Matthew Whalen ("Whalen") President and Chief Executive Officer ("CEO"), the position to which she had reported since becoming Vice President of Leasing, she would now report to Kevin Schmidt ("Schmidt"), Chief Financial Officer ("CFO"), who would act as an intermediary for Whalen.

23. In or around early 2021, Anthony Colletti ("Colletti"), Chief Operating Officer ("COO") suggested to Plaintiff the possibility of her early retirement. She had just turned 61. Plaintiff informed Colletti she had no plans to retire early as she is the sole provider in her household.

24. Beginning in the Spring 2021 Plaintiff was stripped of responsibility. Plaintiff was informed the Company would now be doing mid-year evaluations. She

was also informed that while she could participate in the evaluations of her own staff, including two subordinates, she would not be responsible for their evaluations.

25. Colletti again approached Plaintiff suggesting retirement and requested that she submit a letter to him outlining what she would need to consider such separation.

26. In or around June 2021, long term employee John Garcia ("Garcia"), Vice President of Operations and Construction separated from the Company.

27. Upon information and belief, Garcia was advised of this anticipated separation six months in advance and received a severance package, based upon every year of his service.

28. In addition, Garcia was offered the opportunity to share the news of his departure with staff members and the Company celebrated his tenure.

29. On or about June 25, 2021, Plaintiff submitted a letter to Colletti with a copy to Whalen outlining a proposal for early retirement based upon her years of service and her knowledge of what others had received in retirement or as severance relative to continued medical coverage and severance pay. Prior to submission Plaintiff again reiterated to Colletti that absent the requested items she could not seriously consider early retirement as she is the sole provider in her household.

30. Plaintiff received no immediate response to this proposal but was assured by Whalen that he forwarded it to the entire Board.

31. On or about July 14, 2021, Whalen and Schmidt conducted Plaintiff's mid-year evaluation. Despite a positive performance-based bonus seven (7) months

6

earlier and objective evidence of the success of leasing operations for the Company, for which Plaintiff was responsible, they had very few positive things to say about her work. Whalen indicated that she had to work on items he had allegedly been highlighting for a year. However, he failed to identify the specific issues or items. This was the first negative evaluation or feedback Plaintiff had received in her career.

32. In or about mid-August Plaintiff was invited for a meeting purportedly to discuss the Board's response to her proposed terms for early retirement.

33. Notwithstanding the stated purpose, upon arrival at the meeting, Whalen gave Plaintiff a separation agreement for review and consideration. The agreement provided for separation on November 1, 2021. Further, it proposed only twelve (12) months of severance despite her 34 years of service and one month of medical coverage, plus COBRA coverage with the Company paying through the first year. It also included a general release of all claims, including discrimination, against the Company as well as supplemental releases.

34. On or about Friday, September 3, 2021, Plaintiff responded to the proposed separation agreement. By electronic correspondence, she told Whalen she was extremely disappointed with the content of the proposal and felt she was being discriminated against based upon her age and gender. Plaintiff indicated that it was clear from the series of events that the invitation to submit a request for early retirement was a ruse to force her departure and terminate her employment in an unlawful way. Lastly, she made it clear her email was a complaint of discrimination.

35. Plaintiff received no response to this email.

36. On or about Friday, September 10, 2021, Plaintiff was scheduled to meet with Whalen, Schmidt, and another employee for a lease expiration follow up meeting.

37. Upon arriving at the meeting, only Whalen and Schmidt were present. Plaintiff was immediately advised they were not moving forward with the lease expiration meeting as planned. Rather, her employment was being terminated effective immediately.

38. Whalen read Plaintiff a termination letter which stated in sum and substance that there have been significant uncured areas of concern in her performance for a period of two years and therefore, the Company had decided to eliminate her role and hire a "more experienced executive" to manage the Company's leasing operations.

39. Notwithstanding the Company's pretextual representations, Plaintiff's work and results throughout more than three decades of employment speak for themselves. For example, the Company's properties were 100% leased, fully occupied with the exception of one shopping center which had 97% occupancy until COVID-19, and 86% occupancy upon her termination, with ongoing leasing activity that was expected to raise the occupancy back to pre-COVID numbers. Indeed, Plaintiff had never received a negative evaluation in her career with the Company prior to the newly implemented mid-year evaluation in July 2021. Objectively, her performance had been more than satisfactory.

40. In addition, the letter indicated Plaintiff would be provided only seven weeks of salary and benefits.

41. <u>Plaintiff was expressly told she was being terminated because of her email of September 3, 2021, wherein she made lawful complaints regarding discriminatory behavior directed towards her</u>.

42. Following this meeting Plaintiff was followed to her office, where Whalen and Schmidt waited outside her door, with boxes prepared. Whalen informed Plaintiff she had 15 minutes to gather her belongings and get out.

43. Whalen reminded her several times about the 15-minute timeline and told her she had to surrender her keys and would not be allowed back into the office.

44. In collecting her things, Plaintiff was taking longer than the 15 minutes provided and Colletti quietly informed her that Whalen threatened to call security if she didn't leave the building.

45. Ultimately, Plaintiff left the building escorted by Colletti and Schmidt.

46. Further, Cord Meyer has a longstanding policy of providing employees with payment of their accrued but unused vacation upon separation.

47. Notwithstanding this policy, Cord Meyer failed to pay Plaintiff for her accrued but unused vacation time in violation of the NYLL.

48. Plaintiff has contemporaneously filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission (hereinafter "EEOC").

## FIRST CLAIM FOR RELIEF
### (Title VII – Sex Discrimination)

49. Plaintiff repeats and realleges each and every allegation previously contained herein.

50. Plaintiff has been discriminated against by Cord Meyer on the basis of her sex in violation of Title VII, in that the Company engaged in a course of conduct including, but not limited to, creating inferior terms, conditions, and privileges of Plaintiff's employment because of her sex.

51. Plaintiff has been discriminated against by Cord Meyer on the basis of her sex in violation of Title VII, in that the Company provided Plaintiff, a female, with less favorable severance terms than her male colleagues.

52. As a proximate result of Cord Meyer's discrimination, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, and other employment benefits.

53. As a further proximate result of Cord Meyer's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, and other incidental and consequential damages and expenses.

54. The conduct of Cord Meyer was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief and an award of compensatory, punitive damages and attorney fees all in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Title VII – Retaliation)

55. Plaintiff repeats and realleges each and every allegation contained herein.

56. Cord Meyer retaliated against Plaintiff for making a lawful complaint regarding acts of sex discrimination to which she was subjected, which resulted in her termination.

57. As a proximate result of Cord Meyer's retaliatory conduct, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses, other employment benefits.

58. As a proximate result of Cord Meyer's retaliatory conduct, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, and other incidental and consequential damages.

59. Plaintiff is entitled to equitable and injunctive relief and an award of compensatory, punitive damages and attorney fees all in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### (NYSHRL – Sex Discrimination)

60. Plaintiff repeats and realleges each and every allegation previously contained herein.

61. Plaintiff has been discriminated against by Cord Meyer on the basis of her sex in violation of the NYSHRL, in that the Company engaged in a course of conduct including, but not limited to, creating inferior terms, conditions, and privileges of Plaintiff's employment because of her sex.

62. Plaintiff has been discriminated against by Cord Meyer on the basis of her sex in violation of the NYSHRL, in that the Company provided Plaintiff, a female, with less favorable severance terms than her male colleagues.

63. As a proximate result of Cord Meyer's discrimination, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, and other employment benefits.

64. As a further proximate result of Cord Meyer's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, and other incidental and consequential damages and expenses.

65. The conduct of Cord Meyer was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief and an award of compensatory, punitive damages and attorney fees all in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### (NYSHRL – Retaliation)

66. Plaintiff repeats and realleges each and every allegation contained herein.

67. Cord Meyer retaliated against Plaintiff for making a lawful complaint regarding acts of sex discrimination to which she was subjected, which resulted in her termination.

68. As a proximate result of Cord Meyer's retaliatory conduct, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses, other employment benefits.

69. As a proximate result of Cord Meyer's retaliatory conduct, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, and other incidental and consequential damages.

70. Plaintiff is entitled to equitable and injunctive relief and an award of compensatory, punitive damages and attorney fees all in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF
### (NYSHRL – Matthew Whalen - Aider and Abettor)

71. Plaintiff repeats and realleges each and every allegation contained herein.

72. The unlawful acts contained herein were aided and abetted by Defendant Whalen in violation of § 296(6) of the NYSHRL.

73. As a proximate result of Whalen's actions, Plaintiff suffered and continues to suffer substantial loss of past and future earnings, and other employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

74. As a further proximate result of Whalen's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses, all contributing to Plaintiff's damages in an amount to be determined at trial.

75. The conduct of Whalen was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to an award of injunctive and equitable relief and an award of compensatory, punitive damages and attorney fees from Defendant Whalen in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### (NYCHRL – Gender Discrimination)

76. Plaintiff repeats and realleges each and every allegation previously contained herein.

77. Plaintiff has been discriminated against by Cord Meyer on the basis of her gender in violation of the NYCHRL, in that the Company engaged in a course of conduct including, but not limited to, creating inferior terms, conditions, and privileges of Plaintiff's employment because of her gender.

78. Plaintiff has been discriminated against by Cord Meyer on the basis of her gender in violation of the NYCHRL, in that the Company provided Plaintiff, a female, with less favorable severance terms than her male colleagues.

79. As a proximate result of Cord Meyer's discrimination, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, and other employment benefits.

80. As a further proximate result of Cord Meyer's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, and other incidental and consequential damages and expenses.

81. The conduct of Cord Meyer was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief and an award of compensatory, punitive damages and attorney fees all in an amount to be determined at trial.

### SEVENTH CLAIM FOR RELIEF
### (NYCHRL – Retaliation)

82. Plaintiff repeats and realleges each and every allegation contained herein.

83. Cord Meyer retaliated against Plaintiff for making a lawful complaint regarding acts of gender discrimination to which she was subjected, which resulted in her termination.

84. As a proximate result of Cord Meyer's retaliatory conduct, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses, other employment benefits.

85. As a proximate result of Cord Meyer's retaliatory conduct, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, and other incidental and consequential damages.

86. Plaintiff is entitled to equitable and injunctive relief and an award of compensatory, punitive damages and attorney fees all in an amount to be determined at trial

### EIGHTH CLAIM FOR RELIEF
### (NYCHRL – Matthew Whalen - Aider and Abettor)

87. Plaintiff repeats and realleges each and every allegation contained herein.

88. The unlawful acts contained herein were aided and abetted by Defendant Whalen in violation of § 8-107 (6) of the NYCHRL.

89. As a proximate result of Whalen's actions, Plaintiff suffered and continues to suffer substantial loss of past and future earnings, and other employment benefits, all to Plaintiff's damage in an amount to be determined at trial.

90. As a further proximate result of Whalen's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses, all contributing to Plaintiff's damages in an amount to be determined at trial.

91. The conduct of Whalen was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to an award of injunctive and equitable relief and an award of compensatory, punitive damages and attorney fees from Defendant Whalen in an amount to be determined at trial

### NINTH CLAIM FOR RELIEF
### (Failure to pay wage supplements - NYLL)

92. Plaintiff repeats and re-alleges each and every allegation contained herein.

93. New York Labor Law § 190 (1) provides, part, "[t]he term 'wages' also includes benefits or wage supplements as defined in section one hundred ninety-eight-c of this article, expect for the purposes of sections one hundred ninety-one and one hundred ninety-two of this article."

94. New York Labor Law § 198-c (2) provides, "[a]s used in this section, the term 'benefits or wage supplements' includes…vacation, separation or holiday pay."

95. Moreover, New York Labor Law § 191 (1) and (3) together require that "[i]f employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section. If requested by the employee, such pages shall be paid by mail."

16

96. During Plaintiff's employment Plaintiff earned vacation time, and maintained accrued, but unused vacation time upon her separation.

97. In accordance with a longstanding policy of Cord Meyer, employees are entitled to payout of accrued, but unused vacation time upon their separation from the Company.

98. However, upon separation, Defendants did not pay Plaintiff these wage supplements in violation of NYLL.

99. Upon information and belief, Defendants' failure to pay wage supplements was willful.

100. Thus, Defendant violated NYLL § 191 and is liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## V. DEMAND FOR JURY TRIAL

101. Plaintiff repeats and realleges each and every allegation contained herein.

102. Plaintiff hereby demands a trial by jury.

**WHEREFORE**, as a result of the discriminatory and unlawful conduct and actions of Defendants herein alleged, Plaintiff respectfully requests the following relief:

a. On the First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Claims for Relief, an award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages;

b. On the Ninth Claim for Relief, an award of Plaintiff's actual damages in an amount to be determined at trial plus interest;

c. Cord Meyer, its agents, employees, officers, and successors in interest, be enjoined from engaging in the illegal and unlawful customs, policies, and practices described herein;

d. Plaintiff be awarded compensatory, liquidated and punitive damages, where applicable by statute, all in an amount to be determined at trial;

e. Defendants be ordered to pay Plaintiff pre and post judgment interest;

f. Defendants be ordered to pay the costs and disbursements of this action, including Plaintiff's attorneys' fees; and

g. Plaintiff be awarded such other and further relief as the court deems just and proper.

Dated: October 28, 2021
Bohemia, New York

Respectfully submitted,
ZABELL & COLLOTTA, P.C.

By: _____
Saul D. Zabell, Esq.
Diana M. McManus, Esq.
One Corporate Drive, Suite 103
Bohemia, New York 11716
Tel: (631) 589-7242
Fax: (631) 563-7475
SZabell@laborlawsny.com
DMcmanus@laborlawsny.com